# HOWELL vs. THE LAWRENCEVILLE MANUFAC-TURING COMPANY et al.

To discharge securities to a note, by giving indulgence to the principal, it is necessary that the creditor should know the character in which the parties signed the paper. And it is error in the Court to assume that this fact has been proven, when there is a conflict of testimony upon the subject.

Complaint, in Gwinnett Superior Court. Tried before Judge Hutchins, at November adjourned Term, 1859.

This was an action brought by Evan Howell, against The Lawrenceville Manufacturing Company, and Jesse Lowe, James Garmany, and Merit Camp, to recover the amount due on a promissory note, of which the following is a copy:

"3,701.98.

"Lawrenceville, May 9, 1856.

"Thirty days after date the Lawrenceville Manufacturing Company will pay to Evan Howell, or bearer, three thousand seven hundred and one $\frac{98}{100}$ dollars, value received, with interest from date.

"J. S. PETERSON,
    Agt. Law. Man'g. Co.,
"JESSE LOWE, Pres't.,
"JAS. GARMANY,
"MERIT CAMP."

There was a credit on the note of nineteen hundred dollars, dated 28th July, 1856.

To this action the Lawrenceville Manufacturing Company and James Garmany set up no defence, but Lowe and Camp pleaded, that they were but the securities of the company, and that Howell had indulged the company to their injury, for a consideration, and that therefore they were discharged from liability on the note.

The testimony adduced on the trial exhibited the following state of facts, to wit:

The note sued on was given for eighty bales of cotton. The cotton was purchased by Peterson, the agent, for the use and benefit of the company, and by the authority of the Board of Directors. At the time the trade was made, it was

(This case was up subsequently, see Camp v. Howell, 37 Ga. 312.)
**DISCHARGE OF SURETY.** "Where the holder of a promissory note, without the assent of the surety, agreed with the principal to wait twelve months, in consideration of the promise of sixteen per cent. interest; and for the nine per cent. usurious interest took a new note with security, a portion of which usurious note was subsequently paid, and the time was given accordingly: Held, that **the surety to the original note was discharged.**" Camp v. Howell, 37 Ga. 312 (2), 311.

agreed that the agent should make a note, signed by himself as agent of the company, and by Jesse Lowe, John Mills, Hiram R. Williams, Joseph P. Brandon, and James P. Simmons, who were the directors. The agent testified: That all of the parties to the note, except himself, were stockholders in the company, and signed the note as sureties only, but it did not appear in the evidence that the plaintiff had any knowledge of the character in which the defendant signed the note; he was not present when the note was signed, and did not know whether Lowe, Garmany and Camp signed the note as sureties or joint makers; the note was signed and sent by mail to plaintiff's son and agent in Atlanta; Lowe was the president of the company at the time the note was given; sometime in September, 1856, the plaintiff demanded payment of the balance due on the note, which the company were at the time unable to pay, and it was then agreed by and between the plaintiff and the agent, and Garmany, who was then president of the company, that the plaintiff would indulge the parties twelve months longer on the note, and in consideration of such indulgence, he should receive sixteen per cent. interest on the sum due; in furtherance of this agreement, a note was given by the agent, with Garmany as security, for about one hundred and sixty dollars, payable to the plaintiff, upon which note one hundred dollars was afterwards paid.

The testimony being closed, the presiding judge, amongst other things, charged the jury:

"That if they believed, from the evidence, that Lowe signed the note as president of the company, to bind the company, and not to bind himself individually, that he was not personally bound.

"That the members of the company, though interested therein, may be the securities of the company, and that though thus interested in the company, they are entitled to all the rights of securities under other circumstances.

"That if the jury should believe, from the evidence, that Camp signed the note as security, and that indulgence was given to the company by the plaintiff, without the knowledge or assent of the security, the security was discharged."

The jury returned a verdict in favor of the plaintiff, against the company, and Garmany, for the sum due on the note, and in favor of Lowe and Camp.

Counsel for plaintiff then moved for a new trial on several grounds, only one of which was considered by the Court, to wit:

That the Court erred in giving the charges before set forth.

The motion for a new trial was heard at the March Term, 1860, and overruled by the presiding judge, and his refusal to grant the new trial is the error assigned in this case.

PEEPLES, and CLARK & LAMAR, for plaintiff in error.

GREEN & SIMMONS, and WINN, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

For the double purpose of simplifying and shortening the decision in this case, I shall confine myself to the third ground of alleged error in the motion for a new trial. The Court charged the jury: "That if they should believe, from the evidence, that Camp signed the note as security; and if they should further believe that indulgence was given to the company, by plaintiff, without the knowledge or assent of the security, the security was discharged."

The legal proposition thus stated by the Court is not law; for it may be true, that Camp signed the note as security, and that indulgence was given by the plaintiff to the Lawrenceville Manufacturing Company, without the knowledge or assent of Camp, and still he is not discharged, unless the plaintiff *knew* that Camp signed as security. His Honor the presiding judge, instead of *assuming* this fact, and thereby excluding it from the consideration of the jury, which he had no right to do, should have submitted it to the jury, for them to find upon the proof submitted. It may be argued that the payee of a note must necessarily know who is principal and who security; and ordinarily he does. But this is not necessarily and always true; and we think the evidence in this case justifies this conclusion. Take the testimony of Mr. Peterson, the agent of the company, who made the note. He says it was the *practice* for the agent and president to sign notes in their official capacity, and that often the president and directors signed immediately underneath *as securities;* which names were embraced in a bracket, and

at the end the word securities, wrote across the note. He further testifies: "I can not say whether the plaintiff knew in what character the parties signed the note or not, but I know I promised him a note *made in the usual way, with the Board of Directors as securities.*" He says: "It seems to me that plaintiff must have known them as securities," but adds, "the note itself must decide its classification."

Thus, it will be perceived that Mr. Peterson, who swears most conscientiously, I doubt not, does not state that Mr. Howell *knew* that Lowe and Camp signed this note as *securities only.* And why should he? The note is not such as it was the practice to give; neither is it such as was promised by Mr. Peterson to Howell. He was not present when it was given. He might well have supposed that it was intended to bind the corporation as such, and Lowe and Camp *individually,* and not as securities; they being stockholders and interested in the consideration of the note, namely: the lot of cotton bought for the factory.

But be that as it may, was it not a fact to be left to the jury, without any expression or intimation of an opinion from the Court, whether or not it was proven, much less an assumption by him in the charge complained of, that it was proven?

Thus stands the case, then, as received in the light of the defendant's proof. Mr. Singleton G. Howell, a prominent actor in this business, was present at the interview between the plaintiff and Mr. Peterson when negotiating about this cotton. He deposes that Mr. Peterson was to make a note signed by him, as agent for the company, with the names of the directors, and transmit the same to witness, by mail, when the cotton was to be shipped from Atlanta. The note sued on was sent, which was regarded by witness as satisfactory. That before he received it, the cotton was forwarded by mistake to Lawrenceville, and he did not stop it. He avers emphatically and positively, that although present at the conversation between Peterson and Howell, that "he (the witness) knew nothing of the character in which any of the parties signed the note save Peterson, the agent, except from its face, nor did my father, the plaintiff, so far as I know. The note passed into plaintiff's hands through me."

Does not the answers of both witnesses rebut, effectually, the ordinary presumption that the contractee knows which of

the contractors were principal and which security? At any rate, is it not a fact subject to be referred to the jury, under the circumstances of the case? We can not entertain a doubt upon this subject.

It may be said that, if the Court charged the law correctly as far as he went, but omitted to charge the whole law applicable to the point, that the omission is not a reversible error, unless his attention was called to it by counsel. And while this is a sound proposition in most cases, yet this charge can not be justified upon this ground. For the charge, as given, we repeat, is admitted not to be maintainable without further qualification. And we close as we began, by holding that Lowe and Camp may have signed as securities, and indulgence may have been given by the creditor to the principal debtor, without their knowledge or assent; still, they are not discharged, *unless* the defendants go further and show that the plaintiff knew that they were securities only to the contract. This they have attempted to do, whether successfully or not, it is not for this Court to say, much less for the Court below to assume in the charge *sub judice*. There is a contrariety, not to say conflict, of evidence upon this point. If the note is to be judged by its face, it is a clear case for the plaintiff. Neither Mr. Peterson testifies to the knowledge of the plaintiff, as to the character in which the makers signed, nor does Mr. Singleton G. Howell. The one thinks he must have known, and assigns the reasons for his belief. The other, who transacted the business, asserts positively that he was ignorant upon this point, and his father likewise, so far as he knows, and gives the grounds of this opinion. And I would add, that the variance in their depositions, as to what was said at the house of Singleton G. Howell, by Peterson and plaintiff, is not the case of positive and negative proof. The attention of both was called to the transaction. Peterson says the directors were to sign as securities, which, by the way, they never did; and Howell swears that they were to sign *individually,* which Lowe and Camp did. It is the legitimate office of the jury to decide between them, under all the circumstances of the case.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court,

that the judgment of the Court below be reversed, upon the ground that the Court erred in charging the jury, "that if they should believe, from the evidence, that Camp signed the notes as security, and if they should further believe that indulgence was given to the company by plaintiff, without the knowledge or assent of the security, the security was discharged." The Court thus assuming the fact that it was established by the proof, that Howell had knowledge that Camp was security *only,* to the notes.